129 N.J. Super. 84 (1974)
322 A.2d 455
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
YVONNE WILLIAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 9, 1974.
Decided June 11, 1974.
*85 Before Judges COLLESTER, LYNCH and MICHELS.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. David A. Faloni, Designated Counsel, on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Robert A. Rubenfeld, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by COLLESTER, P.J.A.D.
Defendant was tried to a jury and found guilty on a six-count indictment which charged that *86 on three different days she unlawfully distributed heroin and unlawfully possessed the heroin with intent to distribute it. She was sentenced to six concurrent indeterminate terms with a maximum of ten years at the New Jersey Correctional Institution for Women at Clinton.
On appeal defendant first contends that she should not have been convicted of both the possession of heroin with intent to sell and the sale of the heroin which were part of one criminal transaction. We agree. The State's proofs showed that on each of the three days an undercover narcotics agent went to defendant's apartment and purchased one bag of heroin for $5. There was no evidence that defendant had possession of any heroin other than that which she sold to the agent. Therefore, under the facts of this case possession of the heroin with intent to distribute, while a crime in itself, was also an essential element of the unlawful distribution of which defendant was convicted and must be considered an included offense. She cannot be convicted of both. State v. Wilkinson, 126 N.J. Super. 553 (App. Div. 1973), certif. denied 63 N.J. 562 (1973). But see, State v. Ruiz, 127 N.J. Super. 350 (App. Div. 1974).
Defendant next urges that the offenses of which she was convicted constituted one continuing transaction and therefore she should have been convicted on only one charge. We find no merit to this contention. There was no overall offense here, but three separate offenses on three different dates, and the State could prosecute defendant on each. See State v. Juliano, 52 N.J. 232, 235 (1968) and State v. Brunetti, 114 N.J. Super. 57, 62 (App. Div. 1971).
Lastly, defendant argues that the sentences imposed were excessive. The trial judge is vested with broad discretion in the imposition of a sentence so long as it is within statutory bounds. Before we may interfere there must be a clear showing of an abuse of that discretion. State v. Tyson, 43 N.J. 411 (1964), cert. den. 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965). In light of the circumstances of defendant's repeated sales of heroin we conclude that the *87 sentences imposed for such offenses were not manifestly excessive or unduly punitive and there was no abuse of judicial discretion.
The convictions for possession of heroin with intent to distribute it are vacated. The convictions and sentences for unlawful distribution of heroin are affirmed.
LYNCH, J.A.D. (concurring in part and dissenting in part):
I respectfully dissent from that phase of the court's opinion which holds, without using the label, that the offense of possession with intent to distribute the heroin "merges" with distribution of the drug. Thus I join in the result reached by the majority in State v. Ruiz, 127 N.J. Super. 350 (App. Div. 1974). However, the facts here are somewhat different from those in Ruiz and, since I think the issue is of sufficient importance, I add my own reasons for the position I take.
The reasons for my dissent are both factual and legal. Factually, defendant's possession of the heroin was not "fleeting and shadowy in its nature," cf. State v. Booker, 86 N.J. Super. 175, 178 (App. Div. 1965), i.e. instanced only at the time of the three sales on May 2, May 3 and May 8, 1972. Rather, the inference is inescapable that defendant took the three bags of heroin from a "stock in trade." Cf. State v. Vallejos, 89 Ariz. 76, 358 P.2d 178 (Sup. Ct. 1960); Laughter v. State, 241 So.2d 641 (Miss. Sup. Ct. 1970). Therefore the possession with intent to distribute was separate and distinct from the sales, and constituted separate crimes. State v. Booker, supra, 86 N.J. Super. at 178, and other cases to be cited below.
The "legal" reason for this dissent is that, in my view, the doctrine of "merger," especially in a case involving statutory offenses, such as separate steps in the drug traffic, deserves reexamination so as to carry out the Legislature's efforts to punish each step in that process. "Merger" has been a mechanism employed to avoid double jeopardy. Since the former emphasis on "technisms" in prohibiting double *88 jeopardy has been replaced by considerations of "underlying policies," "fairness" and "fulfillment of reasonable expectations" (State v. Currie, 41 N.J. 531, 539 (1964); State v. Mills, 51 N.J. 277, 289, cert. den. 393 U.S. 832, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968); State v. Redinger, 64 N.J. 41 (1974)). I conceive we are free to reexamine the problem. Applying those standards, I suggest that the statutory offenses herein, as separate steps in the traffic of drugs, are separate offenses, and prosecution for each does not violate the prohibition against double jeopardy.

I
Factually, the evidence indicates that on May 2, 1972, at 6:20 P.M., one Ross took an undercover narcotic investigator, George C. McLemore, to defendant's apartment, introduced him to defendant and told her that McLemore wanted to buy some drugs. McLemore gave a $5 bill to Ross who, in turn, gave it to defendant. Defendant gave Ross a white glassine bag which ultimately proved to contain heroin. On the next day, May 3, 1972, at 8:50 P.M., McLemore went to defendant's apartment by himself. He told defendant that he "came to cop" and put a $5 bill in her hand. She gave him a glassine bag which also later proved to contain heroin. Five days later, on May 8, 1972, at 12:15 P.M., McLemore again went to defendant's apartment and procured another bag of heroin for $5 from defendant. In each instance defendant had the narcotics on her person when she delivered them to McLemore.
In State v. Booker, supra, it was held that where, in three separate episodes, defendant had narcotics on his person when he offered them for sale, the possession antedated the sale, was separate and distinct from the sale, and was a separate crime. 86 N.J. Super. at 178. So here, a clear inference could be drawn that before, and after, the first and second sales, before the third, and between the three separate episodes, defendant had possession of the heroin entirely *89 apart from the time and incident of each specific sale. Therefore such possession was separate and apart from the sales and the offenses of (a) possession with intent to distribute, and (b) distribution, were separate offenses.
I am mindful of several California cases which hold possession and sale of the same drug to be "the same offense" and therefore conviction as separate offenses is impermissible, e.g. People v. Castiel, 153 Cal. App.2d 653, 315 P.2d 79 (D. Ct. App. 1957); People v. Roberts, 40 Cal.2d 483, 254 P.2d 501 (Sup. Ct. 1953), and People v. Branch, 119 Cal. App.2d 490, 260 P.2d 27 (D. Ct. App. 1953). But California has a statute which we do not have, Cal. Penal Code, § 654 at 1872, which provides in part:
An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.
Arizona has a similar statute, and in State v. Vallejos, supra, where defendant was convicted of possession and sale of the same marijuana, the Supreme Court of that state determined to follow the California cases insofar as it considered their reasoning was sound. It said:
We first consider the sentencing for possession in addition to sale. The California cases are numerous and admit of some dispute. What does seem clear is that where the possession was obtained for the purpose of the particular sale, it will be considered one transaction permitting but one conviction and sentence. People v. Branch, 119 Cal. App.2d 490, 260 P.2d 27, 31. In that case the court said:
"By this section, it is indispensable in order to impose separate punishments that there be evidence of separate and divisible acts that are not incidental to each other. In determining this question the courts have refused to dissect the evidence minutely in an attempt to find separate offenses, but, on the contrary, have held that a broad transactional approach should be made."
We consider this view sound but find its application far from simple. In each case the facts must be examined to determine whether the transactional test has been met. Thus where it appears that the defendant simply acquired the marijuana for the purpose of the sale *90 and the acts of acquisition were for the furtherance of the sale (as opposed to the case where it is kept as if general stock in trade) it is but one transaction. The possession then is incidental only to the sale in much the same way as possession is related to transportation when a defendant is arrested in the act of transporting. People v. Roberts, 40 Cal.2d 483, 254 P.2d 501.
However, when it is shown that the defendant has possessed marijuana either before or after the sale in such a way that it is not a part of the transaction of sale he does not come within the protection of the one transaction principle. People v. Holliday, 120 Cal. App.2d 562, 261 P.2d 301, 302. In the Holliday case, the court said:
"Here appellant's conviction of possession can be sustained upon the basis of his possession of marijuana both before and after the transportation and apart from such transportation. It will be recalled that when appellant offered to make a sale to Ruskin he first went back some distance behind a building and returned with his contraband merchandise. This justifies an inference that the marijuana was hidden there and was not brought in the coupe Kelly was driving. The crime of possession was then established and complete, and no transportation of the commodity had taken place." [Emphasis added].
In Vallejos it was held that defendant's possession was separate and apart from the sale and sentences for both possession and sale were upheld. It is true that the evidence was clear in Vallejos that defendant had possession of the marijuana for his own use, whereas there is no such proof here. Nevertheless, I feel here that the inference is inescapable that defendant obtained the drugs which she sold from her own "stock in trade" and that therefore the possession was complete before each sale and after the first and second. See also Laughter v. State, supra, where defendant was convicted of both possession and transportation of the same marijuana drug. In that case the court held that a sale of marijuana to an agent constituted one transaction in which the possession was only incident to the sale and was a lesser included offense, so that conviction for possession precluded subsequent trial of a charge of sale arising out of the same transaction. But the court added:
However, we hasten to point out that the one transaction principle does not apply when it is shown that a defendant had in his possession *91 marijuana or other prohibitive drugs either before or after the sale. In other words, if the appellant had gone to a place where he had marijuana concealed, procured it and sold it to the undercover agent he could have been properly charged, convicted and punished for the possession and sale of marijuana. [241 So. 2d at 644].
Here it is clear, as I have said, that defendant possessed the heroin before and after the first and second sales, and also between each separate sale. Therefore, in my judgment, possession with intent to distribute and distribution were factually distinct and separate offenses.

II
The "legal" reason for this dissent is a disposition to reject the mechanism of "merger," having its genesis in common law crimes and, as to the statutory offenses here involved, to favor recognition of the legislative treatment of the separate steps in the traffic of drugs. Since the reason for the mechanism of merger has been only to avoid double jeopardy, I would sustain prosecution for those steps unless to do so is violative of the standards laid down in State v. Currie, supra, for determining whether "double jeopardy" exists. In Currie it was said by Justice Jacobs, speaking for a unanimous court:
Neither the same transaction test nor the same evidence test is absolute or inflexible * * * [41 N.J. at 538]

* * * * * * * *
In applying the prohibition against double jeopardy, the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals. [41 N.J. at 539; emphasis added].
I submit that, by those standards, double jeopardy is not imposed by defendant's conviction of engaging in the separate steps in this drug operation, of (a) possession with intent to distribute and (b) distribution.
What we are trying to determine, in essence, is whether those offenses constitute the "same offense." There is much *92 confusion in this area. Indeed it has been said that the courts are "in hopeless conflict" as to the problem of identity of offenses. 22 C.J.S. Criminal Law § 278(1). There is where the difficulty lies. Currie, 41 N.J. at 536.
Clearly, however, Currie, Mills and Redinger, in rejecting the former "technisms" used in fashioning "merger," leave us free to reexamine the concept, at least in this context of statutory crimes.
Most authorities are agreed that "merger" as such, whereby at common law a misdemeanor might have merged in a felony, no longer has a reasonable basis on which to rest. The reasons for its application at common law, lying in the difference in earlier days between the incidents of a trial for a felony and a trial for a misdemeanor, no longer exist since the distinctions between felony and misdemeanor have been abolished. 1 Wharton, Criminal Law and Procedure (1957) § 33 at 70-72; 1 Burdick, Law of Crime (1946), § 85 at 83-84; 22 C.J.S. Criminal Law § 10 at 42. See also, 1 Bishop, Criminal Law (4 ed. 1923, § 787 at 560-61). "Merger" has been applied in the earlier New Jersey cases on the assumption that "double jeopardy" depended on the "same transaction" test, or the "same evidence" test, or the concepts of "lesser included offense" or "integral part" of another offense. But those are the "technisms" properly repudiated, I think, by Currie and its sequelae.
In determining whether merger is to be applied here we must consider it in the context of the Legislature's effort in "grappling with a powerful, subtle and elusive enemy"  the drug traffic. Gore v. United States, 357 U.S. 386, 390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958). In Gore, by a single sale of narcotics, defendant was convicted of three separate statutory offenses, as against a claim of double jeopardy. Justice Frankfurter, for the majority, said:
The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the *93 several different regulatory controls single and identic. [at 389, 78 S.Ct. at 1283]
See also, Harris v. United States, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959). True, the separate offenses of possession of narcotics in Gore and Harris were under separate statutes, whereas here both "possession with intent" to distribute and "distribution" are contained in the same statute, N.J.S.A. 24:21-19, subd. a (1). In my judgment that difference would not of itself justify divergent results, i.e., a holding of double jeopardy in this case while there was none in Gore. Whether imposed by three statutes or by one, double jeopardy is unconstitutional.
In Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1926), defendant was charged with possession of intoxicating liquors, its sale, and the maintenance of a common nuisance  all based on the same liquor  and all in violation of the National Prohibition Act. As against a claim of "double jeopardy," the Supreme Court, speaking through Mr. Justice Brandeis, said:
There is a claim of violation of the Fifth Amendment by the imposition of double punishment. This contention rests upon the following facts. Of the nine counts in the information four charged illegal possession of liquor, four illegal sale, and one maintaining a common nuisance. The contention is that there was double punishment because the liquor which the defendants were convicted for having sold is the same that they were convicted for having possessed. But possessing and selling are distinct offenses. One may obviously possess without selling, and one may sell and cause to be delivered a thing of which he has never had possession, or one may have possession and later sell, as appears to have been done in this case. The fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offense. There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction. [at 11, 47 S.Ct. at 253; emphasis added].
Nor is there anything in New Jersey's Constitution which would prohibit the Legislature from punishing each step *94 leading to the consummation of the vicious act of sale of drugs.
In People v. Stewart, 46 Mich. App. 282, 207 N.W.2d 907 (Ct. App. 1973), it was said:
While possession and sale of narcotics may have common elements in some cases, they are nonetheless separate crimes. See Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927). * * * When both charges are joined in one criminal prosecution, as in the case at bar, no double jeopardy problems arise. * * *. [207 N.W.2d at 909]
In State v. Cameron, 283 N.C. 191, 195 S.E.2d 481 (Sup. Ct. 1973), defendant was charged with (a) possession and (b) sale of the same drug. There, too, "double jeopardy" was claimed. In rejecting the contention the court cited several decisions involving analogous situations with respect to possession and sale of nontax-paid liquor; State v. Moschoures, 214 N.C. 321, 199 S.E. 92 (Sup. Ct. 1938); State v. Chavis, 232 N.C. 83, 59 S.E.2d 348 (Sup. Ct. 1950); State v. Stonestreet, 243 N.C. 28, 89 S.E.2d 734 (Sup. Ct. 1955). In all three cases the courts held that double jeopardy was not projected in prosecutions for possession and also for sale of the same liquor. The court, after citing Albrecht v. United States, supra, said in Cameron:
The same rule was articulated in a recent Federal case concerning the violation of narcotic drug laws. Defendant had been convicted of illegally transporting narcotic drugs and of illegally possessing narcotic drugs. He received separate sentences for each conviction. In Vincent v. Mosely, 327 F. Supp. 975 (E.D. Mo. 1971), affirmed 453 F.2d 1218 (8th Cir.1972), he instituted a collateral attack on the separate sentences on the ground that there was one act of allegedly transporting a quantity of narcotic drugs from one state to another. He contended if the government proved transporting the drug, it would necessitate proving possession, and this would be one act, one offense, and should permit only one sentence. The court refused to disturb the sentence for possession stating:
"This argument is without tenable basis under the decision in Gore v. United States, 357 U.S. 386, 389, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958), which stated that `The fact that an offender violates by a single transaction several regulatory controls devised *95 by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic.' * * *"
In 72 C.J.S. Poisons § 8, p. 181, the rule is stated: "Illegal sale and illegal possession constitute two different crimes under statutes prohibiting sale and possession of poisons or drugs." Cf. Kelley v. United States, 107 U.S. App. D.C. 122, 275 F.2d 10 (1960); Torres Martinez v. United States, 220 F.2d 740 (1st Cir.1955).
Both New Jersey and Georgia have adopted a similar rule. In State v. Booker, 86 N.J. Super. 175, 206 A.2d 365 (1965), the defendant had the narcotics on his person when he approached the buyer and made the sale. The Court held that these facts constituted two punishable offenses: possession and sale of narcotic drugs. [195 S.E.2d at 487].
In my opinion the court in Cameron soundly analyzed the issue when it said:
The unlawful sale of a narcotic drug is a specific act and a given sale occurs only at one specific time. Unlawful possession, however, is a continuing violation of the law. It begins as soon as an individual first unlawfully obtains possession of the drug, whatever the purpose of that possession might be, and does not end until he divests himself of it. In this case defendant was violating the law in that he was possessing the heroin not only when he was in his house on the evening of the sale but from the time that he originally [sic] came into possession of it. This could have been one hour, one day, one week, or one month prior to the sale. The length of time makes no difference. He had been violating the law from the time he first took possession and control of the heroin. This was a continuing offense and was not a single act which occurred at the time of the sale. State v. Roberts, 276 N.C. 98, 171 S.E.2d 440 (1969).

* * * * * * * *
The North Carolina General Assembly has determined that the unlawful possession of heroin is illegal. The General Assembly has also determined that the unlawful sale of heroin is illegal. While possession may be a part of the sale, the possession may be legal and the sale illegal; therefore they are separate and distinct offenses. Neither in fact nor law are they the same. We hold, then, that in the instant case two separate, distinct, and punishable crimes were established, and that the court did not err in imposing consecutive sentences. [195 S.E.2d at 488-489].
So here, the New Jersey Legislature has determined that possession of narcotics with intent to distribute is illegal. It has also determined that distribution is illegal. As was said *96 in State v. Reed, 34 N.J. 554, 564 (1961), in a different context but nevertheless in an analysis of the Drug Act, N.J.S.A. 24:18-1 et seq: "Every step in the scheme of illegal distribution was made a violation of section 4." I would follow the reasoning last stated in Cameron, i.e., obeisance to the Legislature's treatment of each step in the drug traffic as a separate offense. See also Gee v. State, 225 Ga. 669, 171 S.E.2d 291 (Sup. Ct. 1969), and 22 C.J.S. Criminal Law § 9(1) at 22-23, where, citing several cases, it was said that "each separate step in a transaction may be made a distinct crime or offense for which separate punishments may be imposed."
State v. Chavis, 232 N.C. 83, 59 S.E.2d 348 (Sup. Ct. 1950), expresses my philosophy in this context:
Two things will help us in our thinking: we are not dealing with common law crimes but with statutory offenses; and not with a single act with two criminal labels but with component transactions violative of distinct statutory provisions denouncing them as crimes. Neither in fact nor law are they the same, State v. Midgett, 214 N.C. 107, 198 S.E. 613. They are not related as different degrees of major and minor parts of the same crime and the doctrine of merger does not apply. The incidental fact that possession goes with the transportation is not significant in law as defeating the legislative right to ban both or either. When the distinction between the offenses is considered in the light of their purpose, vastly different social implications are involved and the impact of the crime of greater magnitude on the attempted suppression of the liquor traffic is sufficient to preserve the legislative distribution and intent in denouncing each as a separate punishable offense.
No doubt many authorities can be arrayed on either side of the question under consideration  many of them, however, wanting in persuasive authority because of the difference in local laws. However, the decided weight of authority supports the view that in cases of factual similarity with the one under review the power of the Legislature, when it so intends, to make punishable as a distinct violation of statute law each offense denounced by the statute, although occurring in the same transaction, must be given effect. [Citations omitted.]

* * * * * * * *
In Massey v. United States, 8 Cir., 281 F. 293, 296, the defendant transported liquor in his car and had carried it into his house when arrested. On appeal from a conviction of illegal transportation and *97 illegal possession, the Court said: "The National Prohibition Act penalizes the illegal possession [of liquor], as well as the illegal transportation, of such liquor. Transportation involves elements of carriage or removal * * * that are not involved in mere possession. Separate acts, though parts of a continuous transaction may be made separate crimes by the legislative power."
In Bell v. United States, 5 Cir., 285 F. 145, 147, certiorari denied 262 U.S. 744, 43 S.Ct. 521, 67 L.Ed. 1211, the defendant drove up in his car and Federal agents searched and found liquor in the car. In holding invalid the defendant's contention that he could not be convicted for illegal transportation and possession in that the transportation included possession, the Court held: A person may be in unlawful possession of liquor and never transport it. If he also transports it, that is a separate offense and each is a violation of the National Prohibition Act, and the court could properly impose punishment on each count.
In Earl v. United States, 9 Cir., 4 F.2d 532, upon the same facts a similar decision was rendered in which the Bell and Massy cases were cited. In Loomis v. United States, 9 Cir., 61 F.2d 653, and Aldridge v. United States, 10 Cir., 67 F.2d 956, it was held that transportation and possession are separate and distinct offenses even though they grow out of the same transaction, and sentence could be imposed on both counts. [Citing cases]. [59 S.E.2d at 349-350; emphasis added].
I do not for a moment suggest that there is unanimity on this issue. See dissent in State v. Ruiz, supra, 127 N.J. Super. at 360, and cases cited in footnote (1). I would point out, however, that State v. Price, 106 Ariz. 433, 477 P.2d 523 (Sup. Ct. 1970), cited in the footnote in the dissent, was decided under the Arizona statute which expressly provides that when an act is made punishable in different ways by different sections of the laws it may be prosecuted only under one. And in Thompson v. State, 290 N.E.2d 724 (Ind. Sup. Ct. 1972), cert. den. 412 U.S. 943, 93 S.Ct. 2788, 37 L.Ed.2d 404 (1973), also cited in the footnote in Ruiz, the definition of "sale" in the statute included "holding, storing or any other possession." Therefore there was only one statutory offense.
More fundamentally, however, my difference with the dissent in Ruiz rests on my view that there is nothing "unfair" or repugnant to "fulfillment of reasonable expectations" in punishing a defendant for "possession with intent to distribute" *98 and also for "distribution." The offender has it within his choice to stop after the first offense and refrain from taking the next  the more damaging offense against society  when he sells the heroin. The victims of drugs are said to multiply geometrically after distribution. As said in State v. Reed: "`Experts assert that one addict infects four and those four infect sixteen, a progression of grave concern to any community.' Report, New Jersey Legislative Commission to Study Narcotics, p. 26 (March 22, 1952)." 34 N.J. at 566. If one possessing drugs with intent to distribute went no further than that status, there would be no further infection of others. It is only when he goes further, and distributes, that the contagion is launched. And the commission of the second and more harmful offense in that act should not, in "fairness" to society constitute a grant of absolution for the first. If "merger" is effected, that is its effect and under the statute (N.J.S.A. 24:21-19) the offender would be subject to no greater punishment than if he had stopped at mere "possession with intent" for the penalties for both offenses are the same. To put it colloquially, he has "nothing to lose" by taking the next step of "distribution," subject of course to what discretion a sentencing judge might exercise.
Nor do I believe that to permit conviction for the separate offenses is frustrative of "reasonable expectations" of what a drug trafficker might have anticipated. A defendant who possesses drugs with intent to distribute should not reasonably expect to be absolved of that offense when he takes the next step and distributes.
The dissent in Ruiz also quotes N.J.S.A. 24:21-19 and finds no reason therefrom to find separate offenses. Again I respectfully disagree. Casting all nuances aside, the act of possession with intent to distribute and the further "step" of distributing are simply not the same, but distinct. They are no more the same than "manufacture" and "possession" are the same. And when statutes define two distinct offenses *99 the State may proceed under either or both of them. Cf. State v. Reed, 34 N.J. 554, 572-573; State v. Morse, 109 N.J. Super. 160, 164 (App. Div. 1970).
Lastly, I respectfully disagree with the dissent in Ruiz wherein it asserts that: "Fundamentally, in the resolution of this issue, we deal with the constitutional proscriptions against double jeopardy." 127 N.J. Super. at 360. At the risk of undue repetition, I rejoin with the words of Mr. Justice Brandeis in Albrecht v. United States, supra 273 U.S. at 11, 47 S.Ct. at 254: "There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction."
Applying the Currie standards of protection against double jeopardy, I would hold there is no merger of the offenses here involved and would affirm conviction of both.