**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5273-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAVID J. LOMANTO,

     Defendant-Appellant.

_____

Submitted April 30, 2019 – Decided  October 15, 2019

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-04-0776.

Joseph E. Krakora, Public Defender, attorney for appellant (Amira Rahman Scurato, Designated Counsel, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Senior Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

Defendant David J. Lomanto appeals from a judgment of conviction that the Law Division entered after a jury found him guilty of fourth-degree public communication of obscenity, N.J.S.A. 2C:34-4(b), and obstructing a criminal investigation, N.J.S.A. 2C:29-1. He also challenges the trial judge finding him guilty of the petty disorderly persons offense of disorderly conduct, N.J.S.A. 2C:33-2(a)(2). Defendant's convictions arose from his arrest after a woman observed him watching pornography one evening while he was sitting in his open-windowed vehicle at a fast food restaurant's parking lot. On appeal, defendant challenges the constitutionality of the obscenity statute, the trial judge's denial of his suppression motion, and the sufficiency of the evidence supporting his convictions for obstruction and disorderly conduct. For the reasons that follow, we affirm.

I.

The facts developed at trial are summarized as follows. On April 22, 2014, at 6:33 p.m., defendant parked his car in a parking space near the front entrance of the fast food restaurant and shortly thereafter, he lowered the vehicle's driver-side window all the way down.

Approximately a half-hour later, a mother, with her twelve-year old son in the car, parked next to defendant. After parking, the boy exited his mother's vehicle and headed towards the restaurant, where he was grabbing a meal before his basketball practice.

While the boy was in the restaurant, the mother noticed defendant had "an electronic device on his steering wheel" that "looked like an iPad." At the time, while her vehicle's windows were slightly lowered, the mother looked at defendant's iPad from inside her car and noticed "there was . . . porn going on the video." Specifically, she saw a "woman with blond hair" performing "oral sex" on a man and then "having sex . . . after that." She also "heard moaning on the video" and during depiction of the oral sex, the mother "saw [a] penis." The mother became "[m]ortified" and "shocked" as they lived in "a small town" and she "[n]ever experienc[ed] anything like th[at] in [her] life."

Approximately seven minutes after he went into the restaurant, the boy returned to his mother's car. There was no evidence that the boy saw or heard any pornography.

After her son entered the car, the mother immediately drove out of the parking lot without contacting the police because she "was in shock."

A-5273-16T4

However, after arriving at her son's basketball practice, the mother shared her observations with a friend of hers. That friend contacted a local police officer.

After receiving information about defendant's location, his car, and his alleged activities, the reporting officer headed to the restaurant to respond and relayed information about defendant over his radio to other officers. In notifying the other officers, the reporting officer stated there was "a suspicious vehicle in the [restaurant's] parking lot that had been there for an extended period of time." A local canine police officer also responded to the parking lot where the reporting officer met her.

When the officers arrived at approximately 8:21 p.m., defendant was still parked at the location and his vehicle's windows were all the way down. The canine officer parked behind defendant's vehicle, which prevented him from being able to drive away. According to the officer, when she proceeded towards the driver-side of defendant's vehicle, she saw an electronic device "propped up on . . . the steering wheel, and on the screen appeared to be an Asian girl covered -- sort of pulling a white sheet or something over herself." She observed what "appeared to be . . . a live interaction of some sort."

When the officer reached defendant, who remained seated in his vehicle, defendant asked, "what's the problem?" The officer "identified herself and . . .

4

explained . . . that [she] was approaching him" because she "had received a complaint." Defendant then quickly closed out of the screen displayed on his device. At that point, the officer observed "behind [the iPad's] screen was another screen that had girls or women," but the officer "wasn't sure" as they looked "very similar, but a bunch of different squares . . . you could choose. And they all appeared to have . . . live interaction going on, [as] you could choose which one."

The officer asked defendant "for his identification," which he refused to provide to her. According to the officer, she asked for the identification "[j]ust to conduct the investigation to see if there was some sort of crime being committed or . . . just to investigate the complaint that [she] received." The officer "asked [defendant] repeatedly for identification, . . . he began saying that he doesn't have to provide it, [and] that . . . his rights were being violated." "[W]hile verbalizing that he wasn't going to provide . . . any of his identifying information," defendant "reached around in the vehicle" toward "the rear of the center console."

When defendant repeatedly refused to provide his identification, the officer finally asked defendant to exit the vehicle, which he did not do voluntarily until the officer opened his vehicle's door. At that point, the

5

officer placed defendant under arrest for obstruction and searched him.[1]  The reporting officer then proceeded to secure the vehicle, raised the windows, and removed the key.

Defendant's vehicle was later impounded and searched pursuant to a warrant.  The affidavit supporting the warrant stated that there was probable cause to believe defendant's electronic devices contained evidence associated with child pornography and endangering the welfare of children based on defendant's viewing of pornography at a fast food restaurant in front of a minor, the recovery of kids' toys from his person, and the appearance of young girls on his iPad when the officer approached his car.  Pursuant to that search warrant, the police recovered an iPad and cell phone from the front seat, three cell phones in the glove compartment, another cell phone from the rear seat, and a second iPad and a laptop from the trunk of defendant's vehicle.

A police expert in computer forensics unsuccessfully attempted to access the contents of the iPad defendant was looking at as it was locked with a passcode.  However, in 2016 the officer secured a search warrant to unlock the iPad with a device.  In his affidavit for the search warrant, the officer stated he

---

[1]  The officer recovered two Hot Wheels cars and a Minnie Mouse figurine from defendant's pocket, but those items were not presented to the jury.

had probable cause to believe the iPad contained evidence that pertained to public indecency and particularly public communication of obscenity. After the application was granted, the officer extracted data from the iPad that showed between 6:30 p.m. to 10:00 p.m. on April 22, 2014, defendant was browsing one or more pornography websites through the restaurant's wifi connections. In addition, the officer extracted Skype conversation logs between defendant, whose username was "hunkofburninglove," and several other persons with usernames of "Sharen_cute," "Marie.aguilar84," and "Maureen1512," who exchanged flirtatious messages with defendant.

Defendant was charged in an April 16, 2015 indictment with one count of each of the two crimes that the jury later found him guilty of committing and in a summons complaint with the petty disorderly persons offense, which the trial judge found him guilty of committing. Defendant filed a motion to dismiss the indictment on August 13, 2015. At an October 2, 2015 hearing, defendant argued that the public communication of obscenity statute was "unconstitutionally vague in that the mens rea element of the crime is not defined." Defendant also challenged whether he obstructed an investigation. The judge denied the motion. Defendant filed a second motion to dismiss the indictment on April 28, 2016, and cited a proposed but un-adopted amendment

7

to the public communication of obscenity statute to establish that the statute did not apply to conduct inside a motor vehicle. At a June 9, 2016 hearing, the judge treated this motion as one for reconsideration of her earlier order "pursuant to either Rule 1:7-4 or Rule 4:49-2." The judge held that the motion was "procedurally barred [under Rule 1:7-4(b)] because defendant filed the motion 270 days after th[e] court's initial decision on the motion to dismiss the indictment." Further, the judge held that "even if the motion was timely filed, defendant's motion would still fail" because the bill amending the statute sought only "to clarify that a person commits a crime of the fourth-degree if he publicly displays obscene material in or on a motor vehicle he owns, operates or leases." The judge found "the purpose of the proposed bill is not to create a new basis for the application of the law or to add a new basis, but to affirm, in th[e] [c]ourt's opinion unnecessarily, that it applies to vehicles."

Defendant filed a motion to suppress the introduction into evidence of his iPad on April 4, 2017. He argued that the State lacked "probable cause [to] issu[e] a search warrant of [his] vehicle and that" the seizure of all items from his vehicle, "including [his] iPad," violated "his Fourth Amendment rights." The judge denied the motion and found no errors in the issuance or execution of the search warrant.

8

A two-day trial began on May 22, 2017. After the State rested, defendant moved for a judgment of acquittal. The trial judge denied the motion.

The jury convicted defendant on both counts of the indictment on May 23, 2017. Prior to sentencing, on July 14, 2017, the trial judge found defendant guilty of disorderly conduct and merged it with the conviction for public communication of obscenity. The judge also denied defendant's motion for a new trial and then sentenced defendant to two concurrent one-year terms of probation and five days in county jail, which he had already served. This appeal followed.

On appeal, defendant argues the following points:

POINT I

N.J.S.A. 2C:34-4 (PUBLIC COMMUNICATION OF OBSCENITY) IS UNCONSTITUTIONAL.

A. THE STATUTORY DEFINITION OF 'PUBLICLY COMMUNICATES' IN N.J.S.A. 2C:34-4a IS OVERBROAD AS IT ENSNARES INNOCENT INDIVIDUALS ENGAGED IN LAWFUL BEHAVIOR AND IMPERMISSIBLY CRIMINALIZES CONSTITUTIONALLY PROTECTED CONDUCT.

B. DEFENDANT DID NOT 'PUBLICLY COMMUNICATE' ANYTHING FROM INSIDE HIS CLOSED CAR IN WHICH HE HAS

9

CONSTITUTIONALLY PROTECTED PRIVACY INTERESTS.

POINT II

THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS THE WARRANTLESS SEARCH AND THE TWO SUBSEQUENT SEARCHES WITH WARRANTS.

     A.   THE LEGAL STANDARD FOR A MOTION TO SUPPRESS.

     B.   DEFENDANT AND HIS IPAD WERE ILLEGALLY SEIZED.

     C.   NO PROBABLE CAUSE EXHISTED FOR THE ISSUANCE OF THE SEARCH WARRANTS.

POINT III

THE STATE DID NOT PROVE DEFENDANT WAS GUILTY OF OBSTRUCTION UNDER N.J.S.A. 2C:29-1.

POINT IV

THE JUDGE ERRED IN FINDING DEFENDANT GUILTY OF THE PETTY DISORDERLY PERSONS OFFENSE

II.

A.

We turn first to defendant's constitutional challenge to his obscenity law conviction, which he only partially raised before the trial judge in his

10

unsuccessful motion to dismiss the indictment. Although defendant raised a challenge based on the statute being vague, on appeal he also couches his argument in terms of the statute being overbroad, which he did not raise at trial. The overbreadth and void-for-vagueness doctrines are overlapping, but not identical. See In re Hinds, 90 N.J. 604, 617-18 (1982). The difference is "vagueness implicates notions of procedural due process as to the fairness and adequacy of warning" for what is and what is not criminal, while "overbreadth involves substantive due process considerations concerning excessive governmental intrusion into protected areas." Id. at 618.

Generally, we will decline to consider arguments not raised before the trial judge, unless such an issue concerns substantial public interest. See State v. Robinson, 200 N.J. 1, 20-22 (2009). To the extent defendant did not raise at trial any constitutional argument that he now argues, we choose to review his arguments because the constitutional challenge asserted potentially implicates a substantial public interest.

In our review, we assess a trial judge's decision denying a defendant's motion to dismiss an indictment for an abuse of discretion. State v. Saavedra, 222 N.J. 39, 55 (2015). However, we decide legal issues such as those presented here de novo. See State v. Reid, 456 N.J. Super. 44, 57 (App. Div.

2018). Whether defendant's indictment was based upon an unconstitutional statute is "an issue of law subject to de novo review." State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2016) (citing State v. Pomianek, 221 N.J. 66, 80 (2015)); accord Reid, 456 N.J. Super. at 57.

B.

Although defendant now couches both arguments in terms of the statute being overbroad, his contention is actually that the statute is vague "with respect to deliberate conduct." According to defendant, although "the State has a legitimate interest in protecting deliberate publishing of obscene material, it should do so in a way which does not ensnare individuals who privately view same, or those who inadvertently display pop-ups or other snippets while navigating the internet." By way of example, defendant explains that if an innocent, inadvertent search on a public library's computer reveals "[a]rtistic sculptures, paintings, or videos [they] might fall into criminal contexts, particularly if someone complains," as would "[t]he 'explicit' sounds supposedly heard from [his] car[, which are] often used harmlessly in non-pornographic regular television shows." Because "the statute may unconstitutionally catch and criminalize those 'obscenities' as

12

well," defendant contends the statute is invalid. We find no merit to his contentions.

"'Vagueness []is essentially a procedural due process concept grounded in notions of fair play." Saavedra, 222 N.J. at 68 (quoting State v. Lee, 96 N.J. 156, 165 (1984)). Criminal statutes that are impermissibly vague are unconstitutional. State v. Afanador, 134 N.J. 162, 170 (1993) (quoting Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1993)). "A penal statute should not become a trap for a person of ordinary intelligence acting in good faith, but rather should give fair notice of conduct that is forbidden." Lee, 96 N.J. at 166.

> Clear and comprehensible legislation is a fundamental prerequisite of due process of law, especially where criminal responsibility is involved. Vague laws are unconstitutional . . . because unclear or incomprehensible legislation places both citizens and law enforcement officials in an untenable position. Vague laws deprive citizens of adequate notice of proscribed conduct, and fail to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement.
>
> [Afanador, 134 N.J. at 170 (quoting Town Tobacconist, 94 N.J. at 118).]

"A law is void as a matter of due process if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its

application.'" Town Tobacconist, 94 N.J. at 118 (quoting Connally v. Gen. Constr. Co., 269 U.S. 385 (1926)). Thus, a criminal statute is unconstitutionally vague and violates due process if it fails "to provide notice and warning to an individual that his or her conduct could subject that individual to criminal or quasi-criminal prosecution." State v. Hoffman, 149 N.J. 564, 581 (1997) (citing Screws v. United States, 325 U.S. 91, 101-02 (1945)). "To the extent that there is an unresolved ambiguity in the language of the . . . statute, the rule of lenity . . . cautions against reading the law against a defendant." State v. Young, 233 N.J. 345, 348 (2018) (quoting State v. Sumulikoski, 221 N.J. 93, 110 (2015)).

We conclude there was nothing vague or ambiguous about defendant's indictment for violating N.J.S.A. 2C:34-4(b). The statute provides that "[a] person who knowingly publicly communicates obscene material, as defined in section 2C:34-3[2] or causes or permits it to be publicly communicated on

---

[2] N.J.S.A. 2C:34-3, "Obscenity for persons under 18," defines "[o]bscene material" as:

> any description, narrative account, display, [or] depiction of a specified anatomical area or specified sexual activity contained in, or consisting of, a picture or other representation, publication, sound recording, live performance or film, which by means of posing,

(continued)

14

property he owns or leases or operates is guilty of a crime of the fourth degree." N.J.S.A. 2C:34-4(b) (emphasis added). Proof that an individual made a "[p]ublic communication of obscene material" gives rise to a presumption that the individual did it "knowingly." N.J.S.A. 2C:34-4(c).[3] In the context of this offense, "knowingly" means defendant "had knowledge of the character and content of the material" he "communicated publicly." Model Jury Charge (Criminal), "Public Communication of Obscenity" (N.J.S.A. 2C:34-4(b)) (approved June 22, 1982). Additionally, in N.J.S.A. 2C:2-2(b)(2),

> [a] person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts

_____

(continued)

> composition, format or animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the area or activity.
>
> [N.J.S.A. 2C:34-3(a)(1).]

[3] The presumption is actually a permissible inference a jury can draw "if [it] find[s] beyond a reasonable doubt that [a defendant] publicly communicated obscene material." Model Jury Charge (Criminal), "Public Communication of Obscenity" (N.J.S.A. 2C:34-4(b)) (approved June 22, 1982). The jury is "not required to make th[e] inference" unless it determines "the facts and circumstances shown by the evidence . . . warrant any inference which the law permits the jury to draw," while keeping in mind that the burden of proof never shifts from the State to a defendant. Ibid.

15

knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result.

[N.J.S.A. 2C:2-2(b)(2).]

N.J.S.A. 2C:34-4(a), defines "publicly communicate" as follows:

"Publicly communicate" means to display, post, exhibit, give away or vocalize material in such a way that its character and content may be readily and distinctly perceived by the public by normal unaided vision or hearing when viewing or hearing it in, on or from a public street, road, thoroughfare, recreation or shopping center or area, public transportation facility or vehicle used for public transportation.

[N.J.S.A. 2C:34-4(a).]

Defendant's contentions that the statute ensnares individuals who inadvertently communicate obscene material while engaged in a private viewing of those materials is without merit. The statute clearly only makes it a crime for those who intentionally view pornography in public in a manner that makes the material perceivable to others "by normal unaided vision or hearing." Ibid. The statute does not criminalize an unintentional inadvertent display and there is nothing vague about its language. The allegation that defendant sat in a restaurant's parking lot watching and listening to obscene material in a manner that permitted anyone near his automobile to see and hear

16

the contents of what he was viewing and listening to was clearly prohibited by the statute.

We are not persuaded by defendant's additional argument that the statute's vagueness was established by the Legislature having rejected proposed amendments to the statute on several occasions. These proposed amendments expressed a prohibition on displaying obscene videos from an automobile's video displays, if visible to those outside the vehicle. Defendant's argument that the statute, in its current form, did not contemplate displaying obscene material from automobiles is without merit. We conclude that the Legislature determined that no such amendment was necessary, as the current language of the statute incorporates such activity. "[W]hen a statute's language appears clear, 'we need delve no deeper than the act's literal terms to divine the Legislature's intent.'" State v. Gandhi, 201 N.J. 161, 180 (2010) (quoting State v. Thomas, 166 N.J. 560, 567 (2001)). Only when we find a statute is ambiguous do we look at "a variety of sources, 'such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent.'" In re J.S., 444 N.J. Super. 303, 308 (2016) (quoting Thomas, 166 N.J. at 567).

A-5273-16T4

We also reject defendant's argument that somehow his public communication of obscene material was protected because he was viewing it in the privacy of his car, even though the car was parked in the restaurant's parking lot with its windows lowered, and the restaurant was being frequented by patrons at dinner time. While our courts have repeatedly acknowledged an individual's privacy interest in the contents of their automobile, we have never extended the zone of privacy to what occurs inside a car that is in plain view. See State v. Terry, 232 N.J. 218, 233 (2018) ("[M]otorists have a lesser expectation of privacy in their vehicles when driven on our roadways."); see also id. at 238 ("[A]n officer may seize any contraband [from an automobile] within his [or her] plain view."). Defendant's constitutional challenge is without any basis.

III.

Next, we consider defendant's appeal from the denial of his suppression motion challenging the warrantless search conducted after he was arrested at the scene and the later searches of his car and his iPad pursuant to warrants. The trial judge denied his motion after finding the officer formed a reasonable suspicion to believe that a crime had been or was being committed that

justified her stop and search of defendant, after confirming, through observation, what was told to her.

Defendant maintains his being stopped by the officer in reliance upon a "hunch," which was derived from what amounted to "triple hearsay," was unconstitutional and warranted the suppression of all evidence that was thereafter recovered from him and his vehicle. He states there was no "reasonable suspicion" or "probable cause" to believe he committed a crime. Further, defendant argues that "[t]he affidavits in support of the search warrants did not establish probable cause," and that "substantial omissions occurred which misled the court[ in] issu[ing] the warrants." According to defendant, because the first affidavit stated the police had probable cause to believe he was engaged in child pornography or endangering the welfare of a child, even though he was not subsequently arrested for those charges, "[t]hat alone misled the judges who signed the warrants." We disagree.

In our review of the denial of a suppression motion we "uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Sencion, 454 N.J. Super. 25, 31 (App. Div. 2018) (quoting State v. Boone, 232 N.J. 417, 425-26 (2017)). We defer to the judge's factual findings "because

the motion judge, unlike an appellate court, has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gonzales, 227 N.J. 77, 101 (2016) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We also defer to the court's credibility findings. See State v. Locurto, 157 N.J. 463, 472 (1999). However, "we owe no deference . . . to conclusions of law made by trial courts in suppression decisions, which we instead review de novo." Sencion, 454 N.J. Super. at 31-32. Applying that standard here, we conclude that defendant's contention regarding his stop being illegal is without merit.

"To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense . . . has been or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40 (2002)); accord Terry v. Ohio, 392 U.S. 1, 21 (1968). Whether a reasonable and articulable suspicion exists to perform an investigatory stop depends upon the totality of the circumstances. State v. Pineiro, 181 N.J. 13, 22 (2004). "The [required] 'articulable reasons' or 'particularized suspicion' of criminal activity must be based upon the law enforcement officer's assessment of the totality of circumstances with which he is faced" when "in view of [the]

officer's experience and knowledge, taken together with rational inferences drawn from those facts." State v. Davis, 104 N.J. 490, 504 (1986).

We agree with the trial judge's conclusion that the officer possessed the proper level of suspicion before she effectuated her stop of defendant based upon her having had received a description of defendant's vehicle, its location, and a report of his alleged criminal activity. This was immediately confirmed through the officer's observations upon her arrival. Her independent corroboration of what she was told was more than adequate to support her suspicions. State v. Birkenmeier, 185 N.J. 552, 562 (2006) ("[T]he confidential informant's tip, once corroborated by the observations made by the police, provided sufficient reasonable suspicion to detain and conduct an investigatory stop of defendant."); State v. Smith, 155 N.J. 83, 94 (1998) ("[T]he nature and details revealed in the tip may imply that the informant's knowledge of the alleged criminal activity is derived from a trustworthy source.").

The same personal observations by the officer justified defendant's detention and the warrants being issued, even though the officer did not directly communicate with a reliable informant as argued by defendant. See State v. Marshall, 199 N.J. 602, 612 (2009) ("A search executed pursuant to a

warrant is presumed valid."); see also State v. Mercedes, 233 N.J. 152, 178 (2018) ("[T]he reliability of an informant's tip [should] be analyzed under the totality of the circumstances," while considering the informant's "veracity and basis of knowledge."). The fact that defendant was later charged with a crime that was different than the one the officer suspected he committed or was about to commit, does not change the validity of the stop and the searches that followed. Defendant's motion to suppress was properly denied.

IV.

We turn our attention to defendant's contention that the trial judge erred by denying his motion for a new trial as to his conviction for obstruction. According to defendant, the trial judge's reliance upon defendant's momentary refusal to turn over his driver's license to the officer and leave his car when directed to do so was not sufficient evidence of obstruction. We are not persuaded by this contention.

Under Rule 3:20-1, "[t]he trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice." The trial judge, however, must not set aside a jury verdict "as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that

22

there was a manifest denial of justice under the law." R. 3:20-1; accord State v. Labrutto, 114 N.J. 187, 207 (1989). A judge's decision on such an application is discretionary and entitled to great deference. State v. Brooks, 366 N.J. Super. 447, 454 (App. Div. 2004). We apply the same standard in reviewing a trial court's decision on a new trial motion. Dolson v. Anastasia, 55 N.J. 2, 7 (1969). In our review, we must "weigh[] heavily" the judge's "views of credibility of witnesses, their demeanor, and [the judge's] general 'feel of the case.'" State v. Sims, 65 N.J. 359, 373 (1974); accord State v. Brown, 118 N.J. 595, 604 (1990).

Obstruction of the administration of law occurs when a person "purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." N.J.S.A. 2C:29-1(a). The statute requires an "affirmative" act of "interference with governmental functions." Ibid.; see State v. Fede, 237 N.J. 138, 148 (2019). "To violate N.J.S.A. 2C:29-1(a), a person must not only 'purposely obstruct[], impair[] or pervert[] the administration of law' but must do so through one of the specifically

23                                                                A-5273-16T4

enumerated acts in the statute, through 'physical interference or obstacle' or through an 'independently unlawful act.'" Fede, 237 N.J. at 148 (quoting N.J.S.A. 2C:29-1(a)). "[C]riminal liability under N.J.S.A. 2C:29-1 requires an affirmative act or some affirmative interference." Id. at 149.

The evidence in this case established that defendant both physically interfered with the officer's investigation and committed an independent unlawful act. First, when the officer confronted defendant, he immediately attempted to hide his actions by quickly closing out of the screens he was viewing on his iPad. Second, when asked to exit his vehicle he failed to respond until the officer opened the car's door. Third and significantly, he committed an independent offense when he refused to turn over his driver's license. See N.J.S.A. 39:3-29 (requiring a driver to "exhibit his driver's license . . . when requested so to do by a police officer . . . while in the performance of the duties of his office"); see also State v. Perlstein, 206 N.J. Super. 246, 252-53 (App. Div. 1985) (explaining that a vehicle operator's purposeful failure to provide identification constitutes an "independent[] unlawful act[]" for purposes of the obstruction statute); see also State v. Wysocki, 166 N.J. Super. 137, 142 (App. Div. 1979) (explaining "[t]he propriety of" a request for identification from a driver "may be rested on

circumstances apart from the statute regulating the operation of motor vehicles").[4]

We conclude the evidence was sufficient to permit a rational juror to find defendant guilty beyond a reasonable doubt. The judge, therefore, did not err in denying the motion for a new trial.

V.

We reach a similar conclusion as to defendant's last argument about the insufficiency of the evidence that the trial judge relied upon in finding him guilty of the petty disorderly offense of disorderly conduct. According to defendant, the judge's reliance that either the mother or her son saw or heard pornography emanating from defendant's iPad was not supported by the evidence. We disagree.

N.J.S.A. 2C:33-2 provides that:

> A person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he . . . [c]reates a hazardous or

---

[4] We find defendant's reliance on the Court's opinion in <u>Terry</u> to be inapposite. In that case, the Court explained the circumstances under which police could search an automobile to look for ownership documents—such as a registration—to confirm that a car was not stolen. <u>Terry</u>, 232 N.J. at 242-44. The circumstances here are unrelated to those in <u>Terry</u>.

physically dangerous condition by any act which serves no legitimate purpose of the actor.

[N.J.S.A. 2C:33-2(a)(2).]

Here, the facts that support a conviction of public communication of obscenity illustrate a finding that defendant recklessly created a risk of public inconvenience, annoyance, or alarm by creating a hazardous condition through an act serving no legitimate purpose. Watching pornography in public serves no legitimate purpose. Doing so with one's window's down, and at a restaurant's busy parking lot in full view of families, recklessly exposed pornography to young children which, under the circumstances, was a hazardous condition. There was more than sufficient credible evidence for the judge to rely upon.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION